NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-3526
_____

KBZ COMMUNICATIONS INC,
                                        Appellant

v.

CBE TECHNOLOGIES LLC;
JOHN MANN; BRENDA BARROWCLOUGH;
THOMAS A. WALDMAN; DIANE STEMM;
DAVID REMBUS; GEORGE MELLOR;
JOHN DOE OWNERS, MEMBERS, MANAGERS, OFFICERS, AND
DIRECTORS 1-50
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-13-cv-2011)
District Judge:  Hon. Mary A. McLaughlin
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
November 6, 2015

Before:  FUENTES, JORDAN, and VANASKIE, *Circuit Judges*.

(Filed: December 8, 2015)
_____

OPINION*
_____

---

* This disposition is not an opinion of the full court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

JORDAN, *Circuit Judge*.

KBZ Communications Inc. ("KBZ") asks us to reverse an order of the United States District Court for the Eastern District of Pennsylvania dismissing all claims, with prejudice, against John Mann, Brenda Barrowclough, Thomas Waldman, and Diane Stemm (collectively, the "Individual Defendants"). We will affirm.

## I.   BACKGROUND[1]

KBZ is in the business of selling video conference equipment and related services. CBE Technologies, LLC ("CBE") purchased those products and services pursuant to a "Dealer Agreement" between the parties, dated April 22, 2008. The Dealer Agreement set out the requirements and the process by which the parties would order goods and services, submit invoices, and get paid in the future.

Although KBZ delivered the goods and services contemplated by the contract, CBE failed to pay for them. According to its Complaint, KBZ "continued to sell products and services to CBE during this time period based on CBE's promises to pay and the representations, statements and assurances of the Individual Defendant[s] that [KBZ] would be paid for what it supplied to CBE." (J.A. at 16.) In total, for unpaid invoices from September 2012 to February 2013, CBE owed KBZ $996,103.67.

KBZ filed this action on April 16, 2013.[2] The Complaint alleges breach of contract and unjust enrichment claims against CBE alone; claims for fraud and negligent

---

[1] Because the District Court dismissed KBZ's Complaint against the Individual Defendants in response to their motion to dismiss, we recount the facts as alleged in the Complaint and draw all reasonable inferences in favor of KBZ. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008).

2

misrepresentation against both CBE and the Individual Defendants; and a claim for civil conspiracy against the Individual Defendants alone. In making its claims against the Individual Defendants – who are identified in the Complaint as the President, Purchasing Manager, and other "managers" of CBE (J.A. at 14) – KBZ says that, as early as December 2012, CBE's ownership had decided to "move the company in a different direction" and to "wind down" certain operations, which included moving "away from purchasing products and services of the type [KBZ] provided." (J.A. at 16.) Nevertheless, despite not being "financially sound," CBE continued to order products from KBZ without disclosing that the company was planning changes in its business. (J.A. at 16.) According to KBZ, the Individual Defendants made "intentional misrepresentations" and "intentionally lied" so as to "fraudulently induce [KBZ] to continue selling and deliver[ing] products and services." (J.A. at 17.) By those alleged lies, the Individual Defendants "caused CBE to breach its contractual business arrangement with [KBZ]." (J.A. at 17.) In so doing, says KBZ, they "acted fraudulently and tortiously with respect to [KBZ]." (J.A. at 17.) KBZ urged the District Court to "pierce the corporate veil and hold the Individual Defendants personally liable in this action." (J.A. at 17.)

CBE moved to dismiss the fraud and negligent misrepresentation claims against it, and the Individual Defendants moved to dismiss all claims against them, on the basis that such claims were barred by the "gist of the action" doctrine, which generally "precludes

---

[2] KBZ's previously-filed state court action against CBE for breach of contract and unjust enrichment was withdrawn on June 5, 2013.

3

plaintiffs from re-casting ordinary breach of contract claims into tort claims." *eToll, Inc. v. Elias/Savion Adver., Inc.*, 811 A.2d 10, 14 (Pa. Super. Ct. 2002). The District Court agreed, granting the motions to dismiss, with prejudice, because the case was "at its core, an action for breach of contract." (J.A. at 31.) The District Court noted that "KBZ does not allege any action or statement on the part of CBE or the individual defendants that could be considered a tort independent of CBE's breach of the Dealer Agreement … ." (J.A. at 35.) Any purchases, and the course of dealings that went along with them, would be governed by the Dealer Agreement and, said the Court, would be "part and parcel" of the parties' duties under the agreement. (Addendum to J.A. at 35a.) In particular, "KBZ alleges no injury apart from the financial losses caused by th[e] breach" of contract, "which would be fully compensable in an ordinary contract action." (J.A. at 36.) The Court dismissed the civil conspiracy count because it concluded that the remaining claims for breach of contract and unjust enrichment could not support a cause of action for conspiracy against the Individual Defendants.[3]

KBZ eventually accepted an offer from CBE to settle the remaining counts, and the District Court entered judgment in favor of KBZ against CBE in that amount. KBZ then filed a timely notice of appeal from the District Court's order insofar as it "dismissed Defendants John Mann, Brenda Barrowclough, Diane Stemm and Thomas A.

---

[3] Despite the pleading defects pointed out in these motions, KBZ elected not to amend its Complaint pursuant to Federal Rule of Civil Procedure 15(a)(1)(B). Instead, KBZ filed an opposing brief and did not make an offer of proof as to how it would amend its Complaint if leave were given.

4

Waldman." (J.A. at 45.)  No appeal was filed as to the dismissal of the tort claims against CBE.

## II.    DISCUSSION[4]

Under Federal Rule of Civil Procedure 12(b)(6), a motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court concludes that "the allegations in a complaint, however true, could not raise a claim of entitlement to relief[.]"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007).  "But a court need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss."  *Morse v. Lower Merion School Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (internal quotation marks omitted).  As this case relies on diversity jurisdiction, we apply Pennsylvania state law in conducting that review.  *Chamberlain v. Giampapa*, 210 F.3d 154, 158 (3d Cir. 2000).[5]

In essence, the gist of the action doctrine "is designed to maintain the conceptual distinction between breach of contract claims and tort claims."  *eToll*, 811 A.2d at 14.  That distinction exists by virtue of the different sources of tort and contract duties – the former exists by operation of law as a matter of social policy, while the latter exists by mutual agreement of the parties.  *Id*.  Of course, the behavior of parties to a contract may

---

[4] The District Court had jurisdiction under 28 U.S.C. § 1332(a)(1).  We exercise jurisdiction pursuant to 28 U.S.C. § 1291.  We exercise plenary review over an order granting a Rule 12(b)(6) motion.  *W. Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85, 97 (3d Cir. 2010).

[5] It is undisputed that Pennsylvania law governs this case.

give rise to tort claims as well. But to be cognizable as a distinct claim, "the wrong ascribed to [the] defendant[s] must be the gist of the action, the contract being collateral." *Id*. (internal quotation marks omitted); *see also Bruno v. Erie Ins. Co.*, 106 A.3d 48, 68 (Pa. 2014) ("If the facts of a particular claim establish that the duty breached is one created by the parties by the terms of their contract – *i.e.*, a specific promise to do something that a party would not ordinarily have been obligated to do but for the existence of the contract – then the claim is to be viewed as one for breach of contract. If, however, the facts establish that the claim involves the defendant's violation of a broader social duty owed to all individuals, which is imposed by the law of torts and, hence, exists regardless of the contract, then it must be regarded as a tort." (internal citations omitted)).

Accordingly, the "gist of the action" doctrine bars tort claims "(1) arising solely from a contract between the parties; (2) where the duties allegedly breached were created and grounded in the contract itself; (3) where the liability stems from a contract; or (4) where the tort claim essentially duplicates a breach of contract claim or the success of which is wholly dependent on the terms of a contract." *eToll*, 811 A.2d at 19 (internal citations and quotation marks omitted). Applying this test, the Pennsylvania Superior Court has stated that the gist of the action doctrine bars claims of "fraud in the performance of a contract." *Id*. at 20.

In this case, KBZ's tort claims against the Individual Defendants are prohibited by the gist of the action doctrine, as they arise solely from the alleged underlying breach of contract. There is no broader social duty that CBE or the Individual Defendants owed to

6

KBZ that they supposedly violated. Instead, CBE entered into a contract and failed to fulfill its end of the deal. KBZ claims that the Individual Defendants committed fraud and negligent misrepresentation by lying so as to trick KBZ into continuing to provide its goods and services, even though they knew that CBE could not afford them. But, essentially, KBZ is alleging that the formation of the contract was, itself, the original problem insofar as it represented a promise of payment that has not been fulfilled, and any subsequent "lies" were mere reiterations of the promise that the contract created (*i.e.*, the promise to pay). In other words, the agreement establishes the duty in question, not any principle of tort law or social policy. CBE only owed KBZ the money that the Individual Defendants repeatedly agreed to pay because the contract promised payment in exchange for the goods received. Also, as the Individual Defendants correctly point out, "KBZ's tort claims wholly incorporate the allegations of its contract claims, and KBZ's alleged 'tort' damages are exactly the same as its contract damages." (Answering Br. at 19.)

In response to this straightforward application of the gist of the action doctrine, KBZ raises two primary arguments. First, it contends that its tort claims against the Individual Defendants must survive because KBZ did not have a contract with those defendants. That is wrong. Pennsylvania law provides that "the gist of the action doctrine bars tort claims against an individual officer-defendant where the duties allegedly breached were created by a contract between the plaintiff and the defendant's company." *Addie v. Kjaer*, 737 F.3d 854, 868 (3d Cir. 2013). The aggrieved contracting party cannot "detach" employees from their status as agents of the other contracting party

7

by holding them liable in tort for their company's contractual breach. *Id.* Pennsylvania courts have repeatedly held that employees receive coextensive protection from the gist of the action doctrine. *See Atchison Casting Corp. v. Deloitte & Touche, LLP*, No. 003193 July Term 2002, 2003 WL 1847665, at *3 (Pa. Com. Pl. March 14, 2003); *Flynn Co. v. Peerless Door & Glass, Inc.*, No. 0830 Nov. Term 2001, 2002 WL 1018937, at *3 (Pa. Com. Pl. May 15, 2002); *Flynn Co. v. Cytometrics, Inc.*, No. 2102 June Term 2000, 2000 WL 33711055, at *4 (Pa. Com. Pl. Nov. 17, 2000). The Individual Defendants may avail themselves of the protection of the gist of the action doctrine, even though the contract was between CBE and KBZ.[6]

KBZ next argues that the gist of the action doctrine is categorically inapplicable to fraud in the inducement claims. KBZ, however, has not properly pled a fraudulent inducement claim. *See Bruno*, 106 A.3d at 68 ("[T]he mere labeling by the plaintiff of a claim as being in tort … is not controlling."). Not only do the vague allegations in the Complaint fail to meet the heightened pleading standards applicable to allegations of fraud, as required by Federal Rule of Civil Procedure 9(b),[7] but KBZ has also not alleged

---

[6] In making its argument to the contrary, KBZ does not cite a single case in support of its proposition in the relevant (one paragraph) section of its brief.

[7] Nowhere in the Complaint does KBZ single out any of the Individual Defendants and allege that they engaged in fraudulent conduct. The sole reference to an Individual Defendant as an individual is the reference to Mann telling KBZ in December 2012 that CBE had decided to move in a different direction. This, of course, is not an allegation of fraudulent inducement to enter into a contract four years earlier. Rather than identify the actions of the individuals, the Complaint repeatedly refers to the Individual Defendants as a collective, and notes that they made unspecified "representations," "assurances," and "intentional misrepresentations" to gain KBZ's performance on the Dealer Agreement. (J.A. at 16-17.) KBZ never alleges what the representations were, who they were made

8

that any actions by the Individual Defendants "induced" them to enter into a contract. *See Goldstein v. Murland*, No. CIV. A. 02-247, 2002 WL 1371747, at *1 (E.D. Pa. June 24, 2002) ("A claim for fraudulent inducement includes an additional element, that the misrepresentation was made with the specific intent to induce another to enter into a contract when the person had no duty to enter into the contract."). For one, KBZ cannot claim that any alleged fraud by the Individual Defendants induced it to enter into the Dealer Agreement in April 2008, since none of the allegations about the conduct of the Individual Defendants pre-dates that time. Although KBZ has done its best to simply recast its claim as "fraud in the inducement" rather than "fraud in the performance" of the contract, the date of contract formation is before all of the supposedly fraudulent conduct alleged in the Complaint. For example, KBZ claims that the Defendants made intentional misrepresentations "to fraudulently induce Plaintiff to *continue* selling and delivering products and services." (J.A. at 17 (emphasis added).) The failure to pay occurred between September 2012 and February 2013, almost 5 years after the companies entered into the Dealer Agreement. KBZ's claim cannot be treated as fraud in the inducement when the actions it alleges did not induce it to enter into a contract signed years earlier. If anything, KBZ's claim is one of fraudulent performance on the contract, which is clearly foreclosed by the gist of the action doctrine. *See eToll*, 811 A.2d at 20 ("[T]he

---

to, when the statements were made, what reliance the statements induced, or any other details of the supposedly fraudulent misrepresentations. To satisfy Rule 9, a plaintiff must "plead the who, what, when, where and how: the first paragraph of any newspaper story." *Institutional Investors Grp. v. Avaya, Inc.*, 564 F.3d 242, 253 (3d Cir. 2009) (internal quotation marks omitted). The allegations here plainly do not satisfy that standard.

9

gist of the action doctrine should apply to claims for fraud in the performance of a contract."). Finally, KBZ does not allege in either its Complaint or its brief that the allegedly fraudulent conduct induced it to enter into some new contract with CBE. Indeed, the purchases transacted during the relevant time period did not constitute separate contracts between the parties; they are simply transactions governed by the terms of the pre-existing Dealer Agreement.

Although parties may plead alternative theories of relief pursuant to Federal Rule of Civil Procedure 8(d), here KBZ has not phrased its claims or its factual allegations in the alternative, nor has it identified a single action by any of the Individual Defendants that induced them – fraudulently or otherwise – to enter into the Dealer Agreement. Accordingly, the gist of the action doctrine was properly applied by the District Court.[8]

## III.   CONCLUSION

For the foregoing reasons, we will affirm the dismissal of KBZ's claims against the Individual Defendants.

---

[8] Given the disposition of this issue, we need not address KBZ's arguments concerning personal jurisdiction over the Individual Defendants, though it bears mention that the lack of personal jurisdiction was not the ultimate basis of the District Court's order. Further, we need not address the District Court's dismissal of the "civil conspiracy" count against the Individual Defendants, as KBZ has made no argument whatsoever concerning that count in its brief, and has thus forfeited any objection to its dismissal. *See United States v. Hoffecker*, 530 F.3d 137, 162 (3d Cir. 2008).